# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
May 26, 2009

Charles R. Fulbruge III

SOUTHERN DISTRICT OF MISSISSIPPI
FILED
JUN 2 2 2009
J.T. NOBLIN, CLERK
By_____ Deputy

No. 08-60154

DAVID W AIKEN, JR; MARILYN M AIKEN

          Plaintiffs - Appellants

v.

RIMKUS CONSULTING GROUP INC; JAMES W JORDAN, PE, SE Individually

          Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:06-CV-741

Before JONES, Chief Judge and STEWART and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

    David W. Aiken, Jr. and Marilyn M. Aiken (jointly "Aikens") claim Rimkus Consulting Group, Inc. ("Rimkus") and James W. Jordan ("Jordan") (jointly "Appellees"), engineers hired by an insurer to evaluate post-Katrina damage to the Aikens' house, are liable for falsifying evidence about the cause of damage to their property. The district court granted the Appellees' motion for Judgment as a Matter of Law ("JMOL"), pursuant to Federal Rule of Civil Procedure

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

("Rule") 50(a), at the conclusion of the Aikens' presentation of evidence. The district court held that there was insufficient evidence for a jury to find that the Appellees acted maliciously, recklessly, or with gross negligence. The court also found that there was insufficient evidence to support the Aikens' claims of fraud and conspiracy. The Aikens also appeal evidentiary rulings made by the district court. We AFFIRM.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Aikens owned a vacation home in Pass Christian, Mississippi. After it was destroyed in Hurricane Katrina, they sought recovery under their United States Automobile Association ("USAA") homeowners' insurance policy. The Aikens believe their house was destroyed by a tornado before Hurricane Katrina's storm surge hit.

USAA hired Rimkus to evaluate the damage to the Aikens' house and the cause of the damage. Rimkus contracted with S&B Infrastructure to perform an inspection of the site of the Aikens' house, and Roverto Chapa, an employee of S&B Infrastructure, conducted an inspection in the presence of David Aiken. After Chapa completed the site inspection, he prepared a report which was forwarded to Jordan, a Rimkus engineer, on October 24, 2005. Chapa's initial report concluded that "high winds and storm surge/flooding accompanying Hurricane Katrina destroyed the house, boat house and the pump house." The report also concluded that it could not "be visually determined from the remaining physical evidence the percentage of damage resulting from surge forces and the percentage of damage resulting from wind forces." Jordan reviewed Chapa's report, made modifications to the report, added his name and signature to the report, and sent the report to USAA on December 20, 2005. The modified report sent to USAA still contained the language from Chapa's initial report indicating that 1) high winds and storm surge/flooding accompanying Hurricane Katrina destroyed the Aikens' property and 2) that the percentage of

damage caused by surge forces versus wind forces could not be ascertained through a visual inspection.

USAA requested Rimkus to provide a supplemental report with data clarifying the conclusions presented in the report sent to USAA in December 2005. Specifically, USAA asked Rimkus to identify the areas of the building that were damaged by the wind, as opposed to storm surge, and how that damage would have affected the structure as a whole. In response to this request, Rimkus provided USAA a supplemental report on March 23, 2006. The supplemental report concluded that:

> 1. The storm surge reached an estimated height of 20-feet above ground at the property (excluding waves), and caused the destruction of the building superstructures; however, based upon damages to nearby residences that remained after the hurricane in Bay St. Louis, it is likely that high winds damaged the Aiken building's siding, fascia/trim, flashing, soffit panels, gutters, roofing, and caused localized damages to the roof and/or wallسسsheathing (assuming that these materials were used in the construction of the residence, boat house and pump house) prior to the storm surge sweeping through the site.
>
>     a. Wind-blown debris may have broken windows and doors on the windward side of the buildings (south-and east-facing sides). Wind-driven rain would have entered wind-breached openings in the building envelopes, and caused water damages to wall and ceiling finishes, floor coverings, insulation, and furnishings (assuming these materials were present in the structures).
> b. The water damages to the interior of the Aiken buildings due to wind-drive rain would have been relatively minor compared to the extensive flooding from the storm surge, except for the reported third story of the residence. The storm surge reached the second story of the buildings, but not the third story of the main residence.

After receiving the supplemental report, USAA concluded that damage to the house was largely caused by flooding. This decreased coverage under the

USAA policy at issue here, and the Aikens objected to the amount of coverage they received from USAA. Subsequently, the Aikens brought this suit against USAA and the Appellees in federal district court, asserting claims on the merits of the policy against USAA, and, relevant to this appeal, Mississippi state law claims of gross negligence, malice, bad faith, fraud, and conspiracy against the Appellees. The Aikens also sought punitive damages against the Appellees.

Before the trial commenced, the district court excluded certain expert testimony and documents offered by the Aikens. Specifically, the district court limited the testimony of the Aikens' expert, Mr. Leonard Quick ("Quick"), and would not allow him to analyze Jordan's conduct. Quick was allowed to testify generally to appropriate engineering standards of care. In addition, the district court did not admit reports prepared by Rimkus that the Aikens attempted to enter into evidence. Finally, the court refused to submit the issue of punitive damages to the jury.

The case proceeded to trial before a jury, but before the case was submitted to the jury, the district court granted the Appellees judgment as a matter of law ("JMOL") with respect to all claims. It concluded that claims based on simple negligence were barred, the Appellees did not owe the Aikens an independent duty of good faith and fair dealing, and the evidence was insufficient for a jury to find that the Appellees had engaged in the fraud or reckless or intentional misconduct asserted by the Aikens. The Aikens obtained a jury verdict against USAA in the amount of $64,000, and now appeal the district court's grant of JMOL to the Appellees, as well as the evidentiary and punitive damages rulings.

## II. DISCUSSION

### A. Judgment as a Matter of Law

This court reviews a district court's grant of judgment as a matter of law pursuant to Rule 50(a) *de novo*, applying the same standard as the trial court.

4

That standard is whether a reasonable jury could find for the non-moving party on the issue; all evidence must be taken in the light most favorable to the non-moving party. *Anthony v. Chevron USA, Inc.*, 284 F.3d 578, 582-83 (5th Cir. 2002). The Aikens present several objections to the district court's decision to grant JMOL in favor of the Appellees. We take each argument in turn.

### 1. Gross Negligence (Aikens' Issues 1-3)

The Aikens argue that the district court erred in granting the Appellees motion for JMOL because there was significant evidence of intentional misconduct by Jordan. Specifically, the Aikens argue that "Jordan committed acts with reckless disregard to the rights of the insured" when he made changes to Chapa's initial report. The Aikens argue that a jury could easily infer malice and find reckless disregard for the rights of the insured, and they rely on the Mississippi Supreme Court's decision in *Gallagher Bassett Servs. v. Jeffcoat*, 887 So. 2d 777 (Miss. 2004).

> In *Gallagher*, the Mississippi Supreme Court held
>
> that an insurance adjuster, agent or other similar entity may not be held independently liable for simple negligence in connection [to] its work on a claim. Such an entity may be held independently liable for its work on a claim if and only if its acts amount to any one of the following familiar types of conduct: gross negligence, malice, or reckless disregard for the rights of the insured.

887 So. 2d at 784. Jordan, an outside engineer hired to assess the damage caused by wind as opposed to storm surge, qualifies as a "similar entity" who may be found liable for his work on the Aikens' insurance claim only if his conduct amounts to gross negligence, malice, or reckless disregard for the Aikens' rights. We have conducted a *de novo* review of Chapa's initial report and the report submitted to USAA by Jordan in December 2005. We hold that no reasonable jury could conclude that the changes Jordan made to the initial

report amount to gross negligence, malice, or reckless disregard for the rights of the insured.

Jordan's changes reflect those of an individual reviewing and revising the report. While we recognize that Jordan deleted the word "destroyed" substituting the word "damaged," as well as deleting some paragraphs, these revisions did not change the overall conclusion of Chapa's report. Chapa concluded that the Aikens' property was damaged as a result of a combination of wind damage and storm surge damage. The October 2005 and December 2005 reports make the same basic conclusion.

Furthermore, Jordan's additional findings, as to what damage to the buildings was caused by wind as opposed to storm surge, were a direct result of USAA's additional inquiry. The previous reports indicated that the causes of damage, whether by wind or storm surge, could not be determined through a visual inspection. At USAA's request, Jordan speculated as to the likely causes of damage by relying on weather forecast information and damage to the surrounding area. His reliance on outside resources to provide Rimkus the March 2006 supplemental report does not reflect gross negligence, malice, or reckless disregard for the Aikens' rights   Thus, we AFFIRM the district court's grant of JMOL with respect to these claim.

### 2. Breach of Duty of Good Faith (Aikens' Issue 3)

The Aikens seem to also argue that the Appellees breached their duty of good faith to investigate the Aikens' claims with reasonable diligence. The Appellees owed no such duty to the Aikens. The Mississippi Supreme Court has explained that

> adjusters employed by an insurer, who were not parties to the agreement for insurance, are not subject to an implied duty of good faith and fair dealing to the insured. . . . [Adjusters who were] not parties to the insurance contract between [the insured] and their insurer, [are] not subject to an implied duty of good faith and fair

dealing with [the insured]. [Adjusters'] duty was to their principal, not to [insured].

*Bass v. Cal. Life Ins. Co.*, 581 So. 2d 1087, 1090 (Miss. 1991). As is stated above and explained by *Gallagher*, Jordan's actions as an engineer are similar to those of an adjuster. Like an adjuster, Jordan was not a party to the insurance contract between USAA and the Aikens; therefore Jordan owed no fiduciary duty nor a duty to act in good faith to the Aikens. Furthermore, the Aikens failed to demonstrate that they relied on reports generated by Rimkus, because they hired an expert to assess the cause of damages after Chapa came to inspect the property. We AFFIRM with respect to this claim.

### 3. *Malice and JMOL (Aikens' Issue 4)*

The Aikens argue that Jordan acted with malice; therefore, the district court erred in granting JMOL in favor of the Appellees. The Aikens correctly point to the definition of malice, as defined by the Mississippi Supreme Court and cited by this Court: "'maliciousness does not necessarily mean actual malice or ill will, but the intentional doing of a wrongful act without legal or social justification.'" *DIJO, Inc. v. Hilton Hotels Corp.*, 351 F.3d 679, 684 (5th Cir. 2003) (quotation omitted). The Aikens argue that because they demonstrated by a preponderance of the evidence that Jordan committed an intentional act, by changing Chapa's report without consulting Chapa or conducting a site investigation, the district court erred in granting the Appellees motion for JMOL. The Aikens do demonstrate by a preponderance of the evidence that Jordan committed an intentional act - he reviewed, revised, and changed Chapa's October 2005 report. Our *de novo* review of the record as a whole, however, makes clear that the Aikens failed to demonstrate by a preponderance of the evidence that Jordan committed an intentional, wrongful act.

As is stated above, the differences between the October 2005 report and the December 2005 report are not significant. We hold these changes cannot be

classified as "wrongful acts." Both reports concluded that "high winds and storm surge/flooding accompanying Hurricane Katrina destroyed the house, boat house and the pump house." In addition, the March 2006 supplemental report clarifies the likely cause of damage from wind as opposed to storm surge due to USAA's request for more detailed information. This request provided an adequate justification for Jordan to provide the supplemental report. Thus, we AFFIRM the district court's grant of JMOL with respect to this claim.

### 4. Fraudulent Concealment (Aikens' Issue 6)

The Aikens argue that the Appellees committed fraud when they failed to disclose the changes to Chapa's report until after "USAA relied on them to pay significantly less than what [the Aikens] were entitled to under the homeowner's policy." Under Mississippi law, a claim for fraudulent misrepresentation has nine elements:

> (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) his reliance on its truth, (8) his right to rely thereon, and (9) his consequent and proximate injury.

*McCord v. Healthcare Recoveries, Inc.*, 960 So. 2d 399, 406 (Miss. 2007). Fraud must be proved by clear and convincing evidence. *Id.* A claim for fraudulent concealment requires "some action, affirmative in nature, which was designed or intended to prevent and which did prevent, the discovery of facts giving rise to the fraud claim." *Davidson v. Rogers*, 431 So. 2d 483, 485 (Miss. 1983).

The Aikens' fraud claim must fail in that they present no evidence that any statement in any of the reports was false. The Aikens must at least submit some evidence that the particular factual claims about how their house was destroyed were false; a reasonable jury could not discern the "falsity" of the reports based entirely on minor changes in wording and the unrebutted addition

of more specific facts about the scope of wind damage and weather conditions. The house was destroyed by a combination of wind and storm surge damage. Even assuming, however, that the house was destroyed by a tornado as the Aiken's contend, they presented no evidence that the Appellees knew of their statements falsity or ignored the truth of what actually happened. *See McCord*, 660 So. 2d at 485. JMOL was proper on the fraud claim. Because there was no fraud claim, the fraudulent concealment claim necessarily also fails; Rimkus cannot have concealed what did not happen. We AFFIRM.

### *5. Civil Conspiracy (Aikens' Issue 7)*

The Aikens claim that Jordan and Rimkus conspired to "not follow applicable standards of care for engineers" as well as to violate engineering ethical standards. They do not explain how such failures, assuming they occurred, were "unlawful." Assuming, *arguendo*, that these claims do amount to unlawful conduct, the Aikens claims must still fail. "A conspiracy is an agreement between two or more persons for the purpose of accomplishing an unlawful purpose or a lawful purpose unlawfully." *Braddock Law Firm, PLLC v. Becnel*, 949 So. 2d 38, 44 (Miss. Ct. App. 2006) (citing *Gallagher*, 887 So. 2d at 786).

An employee cannot ordinarily conspire with his corporate employer. When individual defendants are not shown to have acted outside of their employment capacities, they are incapable of conspiring with their corporate employer." *Cooper v. Drexel Chem. Co.*, 949 F. Supp. 1275, 1285 (N.D. Miss. 1996); *see also Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir. 1994). Furthermore, a civil conspiracy claim cannot stand alone, but must be based on an underlying tort. *See Wells v. Shelter Gen. Ins. Co.*, 217 F. Supp. 2d 744, 755 (S.D. Miss. 2002) (applying Mississippi law; collecting cases). The Aikens do not explain what the tort is in this case. If the conspiracy was to commit fraud, it necessarily fails along with the fraud claim. If the failure to "follow applicable

standards of care for engineers" sounds in negligence or gross negligence, the conspiracy claim based on it cannot survive for the reasons explained in Section II.A.(1) of this opinion. JMOL on the conspiracy claim was proper. We AFFIRM.

## B. Punitive Damages (Aikens' Issue 10)

The Aikens argue that the district court should have submitted the issue of punitive damages to the jury on the fraudulent misrepresentation claim. Because we have affirmed the district court's decision to grant the Appellees' motion for JMOL, there is no evidentiary basis on which a jury could consider punitive damages against the Appellees. Thus, we decline to reach this issue.

## C. Evidentiary Rulings

Evidentiary rulings are reviewed for an abuse of discretion. *McIntosh v. Partridge*, 540 F.3d 315, 320 (5th Cir. 2008) (citation omitted).

### *1. Exclusion of Expert Testimony (Aikens' Issue 5)*

Decisions regarding the admissibility of expert testimony must have been "manifestly erroneous" to warrant reversal. *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004). The Aikens argue that the district court erred in preventing their expert, Quick, from testifying that Rimkus and Jordan breached the engineering duty of care. They assert that the court first stated it would allow such testimony, then reversed course once Quick was on the stand, on the basis of Mississippi statutes permitting only licensed Mississippi engineers to provide expert evaluations of other engineers' work. *See* Miss. Code Ann. §§ 73-13-1 *et seq.* The district court did not reverse its previous ruling.

In ruling on a motion *in limine*, the district court stated that Quick's "opinion on standard of care will be allowed generally, and any specific objections can be addressed at trial." During trial, the district court restated its previous ruling and explained that Quick could testify generally to "the standard of care require[d by] an engineer." The Aikens were allowed to question whether it was "proper to change a report without having a conversation or without going to

check out the evidence yourself." This question goes to the very heart of the Aikens' case. The Aikens' were not, however, allowed to ask specific questions about Jordan's engineering work, because Quick was not a licensed engineer. Because the district court's rulings were consistent, and the Aikens were permitted to present testimony regarding general engineering standards of care, we hold that the district court's ruling was not manifestly erroneous. *See Guy*, 394 F.3d at 325.

Finally, any error is harmless, because even assuming Quick would have provided testimony about the Appellees' failure to use due care, the Aikens have not shown that this would make the district court's decision to grant the Appellees' motion for JMOL inappropriate. As is explained above, no recovery is possible for the Aikens' claims that Jordan acted with reckless disregard for the Aiken's rights, the Appellees did not owe the Aikens a duty of good faith, the fraud claim requires showings of falsity and reliance and is unaffected by Quick's testimony, and the conspiracy claim requires the existence of an underlying tort. Quick's testimony would have filled none of those gaps. We AFFIRM.

### 2. *Reports by Rimkus Prepared for Other Clients (Aikens' Issue 8)*

The Aikens next argue the district court should have permitted them to introduce at trial reports prepared by Rimkus for other clients. These reports, they say, included "boilerplate" language similar to that found in the Aikens' report, thus illustrating that Rimkus intentionally sought to conceal the extent of wind damage without regard to the facts of individual cases. Introduction of evidence at trial is governed by the Federal Rules of Evidence ("FRE"). In rejecting the admission of the reports, the district court relied on FRE 403, which states that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." The district court held

that admitting the reports would pose a danger of confusion, "tend to mislead the jury and would otherwise cause delay and waste time." The court noted that a magistrate judge had repeatedly rejected requests to discover the documents, but the Aikens failed to appeal to the district court pursuant to Federal Rule of Civil Procedure 72; thus, the district court refused to reconsider the discovery issue. "The weighing of the probative value of the evidence against its prejudicial impact is committed to the sound discretion of the district court, and the district court did not abuse its discretion here in weighing probative value against prejudice." *Dial v. Travelers Indem. Co.*, 780 F.2d 520, 524 (5th Cir. 1986) (internal citation omitted). We AFFIRM.

### 3. *Other Excluded Testimony*

The Aikens next find error in the district court's exclusion of evidence about whether it was customary for one engineer to sign another's name to a revised report. In particular, they sought the admission of impeachment evidence about a lawsuit filed by a former Rimkus engineer, Overstreet, who sued the company for signing his name to reports without his permission. While the evidence would apparently have impeached a statement made by Jordan, it was not an abuse of discretion to exclude it on the basis of FRE 403. This is because Chapa, the actual engineer who initially visited the Aikens' house, testified that he had no objection to the placement of his name on the December 2005 report that included changes by Jordan; it is thus not clear what purpose showing that another engineer in another case did have such an objection would have beyond prejudicing and confusing the jury. We reiterate that such evidentiary determinations are committed to the sound discretion of the district court. *See Dial*, 780 F.2d at 524. We AFFIRM.

## IIII. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment granting JMOL in favor of the Appellees, decline to reach the issue of punitive damages, and AFFIRM the district court's evidentiary rulings.